IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-2931 |
| | § | |
| APACHE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

A judge's ruling is often viewed as incorrect by the losing party, who seeks reconsideration. It is less common that both sides ask the court to reconsider. In this breach of contract case, both Apache Corporation and W&T Offshore, Inc. seek reconsideration of the court's January 16, 2014 Memorandum and Opinion ruling on the parties' cross-motions for summary judgment. (Docket Entries No. 114, 115).

Based on careful review of the motions and responses, the record, and the applicable law, the court grants W&T's motion for reconsideration and denies Apache's motion. The result is that W&T's expert witness, Jeffrey Compton, may testify as to "Opinion C" on damages. W&T may continue to claim that Apache conducted inaccurate well tests and misallocated oil, including by failing to adjust for "flash factor" and failing to retain records of centrifugal shakeouts taken before May 2006 and of well tests that Apache viewed as inaccurate. The joint pretrial order is due by **June 13, 2014** and docket call is set for **June 20, 2014, at 1:00 p.m.** in Courtroom 11–B.

The reasons for these rulings are set out below.

I.      **Background**

The background is set out at length in this court's January 16, 2014 Memorandum and

Opinion, (Docket Entry No. 105), and is summarized here only as needed to frame the issues raised

on the motions for reconsideration.   Briefly, W&T and Apache were parties to a Production

Handling Agreement (PHA) under which W&T sent oil produced from its well on ST–229 through

a 6.6–mile subsea pipeline to Apache's processing facility on the GI–116 platform.   Production from

W&T's well consisted of a mix of oil, and water, sediment, and other impurities known as "BS&W."

Apache's processing included separating the oil from the BS&W.   The PHA required Apache to

allocate the processed oil between itself and W&T in a "consistent and equitable manner."   (PHA,

Docket Entry No. 68, Ex. 1 at § 6.11).   Apache's allocation used a turbine meter, the MBD–0110

meter, to measure the oil that a separator extracted from W&T's production.   Apache then adjusted

the measurement for BS&W, which Apache in turn measured using centrifugal "shakeouts."[1]

W&T filed this suit in July 2011 in state court.   Apache removed to this court based on

federal-question jurisdiction under the Outer Continental Shelf Lands Act.   W&T's second amended

complaint asserted claims for breach of contract, negligent and fraudulent misrepresentation, and

conversion and seeking declaratory relief, an accounting, exemplary damages, and estoppel.

(Docket Entry No. 27).   Rulings on Apache's motion to dismiss removed the conversion, negligent

misrepresentation, and gross negligence claims from the suit.   (Docket Entry No. 45).

W&T presented three alternative damage calculations (Opinions A, B, and C) through the

report of its accounting expert, Jeffrey Compton.   Compton concluded in Opinion A that Apache

---

[1] Shakeouts are a method of determining BS&W content by putting a sample of processed oil in a centrifuge
to separate the BS&W and then measuring it.

owed W&T $9,777,192, based on an audit exception that W&T sent Apache in November 2007, and in Opinion B that W&T was entitled to $8,658,055.61 in damages based on the total oil production flowing through the MBD–0110 meter, with no adjustment for BS&W. The court excluded Opinions A and B because they were based on accounting guidelines that the PHA did not incorporate and therefore did not follow the PHA's allocation method.

Compton's report included a third alternative damage calculation, Opinion C. Like Opinion B, this calculation was based on the volume of W&T's production flowing through the MBD–0110 meter. But unlike Opinion B, Opinion C adjusted for BS&W. The method Compton used to allocate oil to W&T was virtually identical to Apache's method. Both calculations started with the MBD–0110 metered volume and then adjusted for BS&W content. Opinion C used BS&W measurements taken from W&T's platform, while Apache used BS&W measurements taken from shakeouts conducted on its platform, GI–115.

Compton elected not to use Apache's well test data, explaining that it was "incomplete and inconsistent." (Docket Entry No. 70, Ex. 2 at ¶ 49). Nor did he use the Apache's BS&W measurements of W&T's production. Instead, Compton used the BS&W measurements W&T took on its own platform. Apache moved to exclude Compton's Opinion C as unreliable. (Docket Entry No. 72 at 23–24). Apache presented uncontroverted evidence that for 39 of the 488 days analyzed, Compton's calculation resulted in W&T's total production exceeding the total combined production of W&T and Apache, as measured at the meter for both companies' combined oil production, the LACT meter for sale. Compton and W&T admitted that this was an impossible result.[2] To avoid

---

[2] W&T proffered evidence at the August 6, 2013 motion hearing that the discrepancies between Opinion C and the LACT meter readings could be explained by Apache storing oil in the platform's storage tanks. (Docket Entry No. 100 at 86–87).

this, Compton capped W&T's daily allocations at 100% of the volume measured at the LACT meter. This meant that Compton did not allocate any production to Apache on those days, even though Apache's wells were producing throughout the period.

After hearing argument from the parties, the court tentatively denied Apache's motion to exclude Compton's Opinion C, finding that the discrepancy noted for the 39 days affected the weight, not the admissibility, of the opinion.  (Docket Entry Nos. 97, 100 at 117).

Apache also moved for summary judgment that Opinion C was an improper basis for recovery.  (Docket Entry No. 70 at 11–18).  Apache argued that Opinion C was improper because it did not follow the PHA's required allocation methodology, in part because Opinion C did not use Apache's well-test data and because it measured the BS&W content in W&T's production using W&T's shakeouts.  (*See* PHA § 6.01(b) (stating that W&T's production "will be determined based on . . . well tests performed . . . on [Apache's] Production Facility")).  In the summary judgment motion, Apache attacked Compton's methodology as well as the data he used.  (Docket Entry No. 70 at 18).  The court ruled that the PHA did not bar W&T from presenting a damage calculation that did not use Apache's data, as long as the choice not to use that data was explained.  The court nevertheless entered summary judgment that W&T was precluded from presenting Opinion C, finding that because the Opinion C methodology resulted in more oil being allocated to W&T than was actually produced by the two companies on 39 days, the opinion was unreliable.  (Docket Entry No. 105 at 41–42).

The ruling on the summary judgment motions left for resolution W&T's claims that Apache breached the PHA by:

- failing to conduct accurate well tests;

4

- failing to retain records of well tests Apache deemed inaccurate or abnormal;

- failing to retain the records of shakeouts conducted before May 2006; and

- failing to adjust production for "flash factor" or "shrink."

Both parties moved for reconsideration.  W&T requested reconsideration of the ruling that Opinion C was inadmissible.  (Docket Entry No. 114).  Apache responded, (Docket Entry No. 116), and W&T replied, (Docket Entry No. 118).   Apache filed a motion, styled as a motion for reconsideration but "not ask[ing] this court to reconsider any of the substantive rulings," seeking entry of summary judgment against W&T's remaining claims, contending that without an admissible method of proving damages from misallocation or proof of damages from the remaining breach of contract claims, W&T cannot establish an essential element of those claims.  (Docket Entry No. 115). W&T responded, (Docket Entry No. 117), and Apache replied, (Docket Entry No. 119).

The arguments and responses are analyzed below.

## II.   The Legal Standard for a Motion for Reconsideration

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration.  See *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) (stating that "the Federal Rules of Civil Procedure do not recognize a general motion for reconsideration").   A court retains the power to revise an interlocutory order before entering judgment adjudicating the parties' claims, rights, and liabilities.  FED. R. CIV. P. 54(b).  A motion seeking reconsideration of an order is generally considered a motion to alter or amend a judgment under Rule 59(e) if it seeks to change the order.  *T-M Vacuum Products, Inc. v. TAISC, Inc.*, No. 07–cv–4108, 2008 WL 2785636, at *2 (S.D. Tex. July 16, 2008).  A court may consider a motion to reconsider an interlocutory order so long as the motion is not filed unreasonably late.  *Id.*; *Martinez*

*v. Bohls Equipment Co.*, No. 04-ca-0120, 2005 WL 1712214, *1 (W.D. Tex. July 18, 2005). A motion

to reconsider may not be used to relitigate old matters or to raise arguments or present evidence that

could have been raised before the entry of the judgment or order.  11 CHARLES A. WRIGHT, ARTHUR

R. MILLER, MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1 at 127–28 (2d ed. 1995)

(footnotes omitted).

## III.    Analysis

### A.    W&T's Motion for Reconsideration

Rule 702 of the Federal Rules of Evidence states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or
education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will
>  help the trier of fact to understand the evidence or to determine a fact in
>  issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of
>  the case.

FED. R. EVID. 702.

The burden is on the party offering the expert testimony to establish admissibility by a

preponderance of the evidence.  *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en

banc).  The focus is on the reliability of the principles and methods and of their application, not on

the conclusions or results they generate.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579,

594–95 (1993).  "Vigorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional means of attacking shaky but admissible

evidence." *Id.* at 596.

In response to Apache's argument that Compton used unreliable methodology, W&T emphasizes that Compton used the same method to determine W&T's production because it is unclear from the record how Apache determined production that Apache used. Both started with the volume of W&T's production flowing through the MBD–0110 meter. Compton then adjusted the volume recorded for BS&W. That is the same method Apache used.[3] There is no basis to exclude Opinion C on the basis of the methodology used.

Apache correctly points out that Compton did not use Apache's well-test data, but fails to show that this is a basis to exclude Opinion C. Compton explained that he did not use Apache's well-test data because it was unreliable. The data consistently overestimated Apache's production and underestimated W&T's production.[4] The analysis and explanation of the choice to reject Apache's well-test data makes it inappropriate to exclude Opinion C on the basis of that choice.

Similarly, the fact that Compton did not use Apache's BS&W measurements but instead used W&T's is not a basis to exclude Opinion C as unreliable. As explained in W&T's motion, adjusting the MBD-0110 meter volume using Apache's BS&W measurements rather than W&T's does not

---

[3] The similarity between Compton's method and Apache's method for determining W&T's theoretical production—taking the volume of W&T's production flowing through the MBD–0110 meter and adjusting it for BS&W—distinguishes Opinion C from the expert opinion analyzed in *General Electric Co. v. Joiner*, 522 U.S. 136 (1997). In *Joiner*, the district court excluded an expert opinion that the plaintiff used to establish a causal connection between his cancer and exposure to polychlorinated biphenyls (PCBs). The expert opinion involved a study in which mice "had massive doses" of PCBs injected directly into their stomachs. *Id.* at 144. The Supreme Court held that the district court did not abuse its discretion by excluding the opinion, noting the differences between the exposure analyzed in the animal study and the exposure the plaintiff experienced. In this case, Compton used the same allocation method as Apache. Apache's arguments go to the difference in some of the information to use in applying the methodology. Apache does not dispute that both it and W&T used the MBD-0110 meter volume readings that Apache generated. As explained in the text, the fact that Compton did not also use Apache's well-test data, a decision he explained at length, and used W&T's BS&W measurements, not Apache's, does not support excluding Opinion C.

[4] The court ruled at the August 6, 2013 motion hearing that Compton was qualified to critique Apache's well tests from an accounting perspective. (Docket Entry No. 100 at 118).

remove what Apache contends is the primary indicia of unreliability—some anomalous daily results compared to the LACT meter volumes. (Docket Entry No. 114 at 7 n.31 and Docket Entry No.118 at 2 n.6). The choice to reject Apache's BS&W data is further justified by the fact that Apache later discovered that its calculation of BS&W on some days had been inaccurate, causing Apache to present W&T a check for nearly a half-million dollars. (*Id.*, Ex. 30 at 5). There was a reasonable basis in the record for Compton to conclude that W&T's shakeouts and BS&W measurements were more reliable than Apache's data. The record does not show that either parties' BS&W measurements were so precise as to make Opinion C an exclusively "math-based-expert opinion" that should be excluded if it leads to imprecise or imperfect results on some of the days at issue. The fact that W&T's expert and Apache's expert disagree about whether the same method is properly implemented using W&T's BS&W data or using Apache's BS&W data is appropriate for cross-examination and may go to the weight to be given Opinion C. These disagreements do not, however, make Opinion C inadmissible.

The fact that Opinion C's method produced discrepancies on 39 out of 448 days analyzed—8% of the days for which Opinion C calculated W&T's production— does not mean that Opinion C's methodology is so unreliable at calculating the total misallocation over the 488 days that it should be excluded under Rule 702. Opinion C calculated the total amount of oil that Apache allegedly underallocated to W&T over the 488 days that W&T sent its production to Apache. Opinion C does not attempt to calculate the precise allocation for each of those days and should not be excluded because it failed to do so. (Docket Entry No. 70, Ex. 2 at 1 (stating that Compton's assignment was "to determine amounts due W&T . . . by Apache . . . from April 1, 2006 through August 31, 2007")).

Apache may, through "[v]igorous cross-examination [and] presentation of contrary evidence" attack what could turn out to be "shaky" evidence. *See Daubert*, 509 U.S. at 596. But both Opinion C's method and its application meet the threshold reliability requirement for admissibility. W&T's motion for reconsideration is granted. Because W&T has a viable damages theory, the court need not consider whether W&T may use an alternative method for determining damages.

### B.     Apache's Motion for Reconsideration

Apache argues that the court's earlier ruling that Opinion C was inadmissible leaves W&T without a viable theory to prove that Apache's allegedly inaccurate well tests resulted in W&T receiving less oil than it was entitled to under the PHA. In light of this court's decision to grant W&T's motion for reconsideration and permit W&T to present Opinion C, W&T now has a viable damages theory. Apache's motion for reconsideration to enter summary judgment dismissing the claim that it failed to conduct accurate well tests is denied.

As to the remaining claims, Apache argues that W&T has not pointed to evidence showing that the alleged PHA breaches—failing to adjust for flash factor and failing to retain records of well tests and shakeouts—caused W&T damages. W&T responds that Apache may not assert such arguments on a motion for reconsideration because it did not sufficiently raise them in its summary judgment motion. (Docket Entry No. 117 at 2–3). Apache had the burden of "informing the district court of the basis for its motion[] and identifying those portions of the [record], if any, which it believes demonstrate the absence of a genuine issue of material fact." *Russ v. Int'l Paper Co.*, 943 F.2d 589, 591 (5th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986)) (internal quotations omitted).

W&T argues that Apache's summary judgment motion, (Docket Entry No. 70), did not ask

the court to grant summary judgment on the ground that W&T could not show a causal connection between these alleged PHA breaches and damages. Apache argues that its general statement "that the claims are not causally connected to the damages [W&T] seeks," (Docket Entry No. 119 at 1) (internal quotations omitted), was sufficient. W&T has the more persuasive argument, given the record. Apache's motion for reconsideration, asking this court to find in its favor on three of the four remaining claims as a matter of law, is denied.

As to W&T's claim that Apache failed to adjust for flash factor, Apache did not state that it was seeking summary judgment on that claim. The terms "flash factor" or "shrinkage"[5] are hardly mentioned in Apache's summary-judgment motion. The motion mentions "flash factor" once, in quoting from the PHA to support Apache's argument that Compton's Opinion B did not follow the PHA's allocation method. (Docket Entry No. 70 at 9). Apache did not discuss in its motion whether the failure to adjust for "flash factor" breached the PHA. Apache's motion stated in one line introducing the "Argument and Authority" section that "[W&T's] remaining causes of action . . . fail as a matter of law."[6] (Docket Entry No. 70 at 6; *see also id.* at 5). This reference did not sufficiently inform the court or W&T that Apache was seeking summary judgment on the "flash factor" claim. *See Russ*, 943 F.2d at 591 ("Simply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case."); *see also Celotex*, 477 U.S. at 328 ("[T]he movant must discharge the burden the Rules place upon him: It is not enough to move for summary judgment without

---

[5] "Shrinkage" is another term for "flash factor."

[6] Apache argued that W&T "has not demonstrated that it suffered damages as a result of this alleged [failure to adjust for flash factor]," but this was in Apache's opposition to W&T's motion for summary judgment. (Docket Entry No. 86 at 22). Apache's failure to raise the issue in its summary-judgment motion evidences intent not to seek summary judgment against the claim.

supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case.") (White, J., concurring).

The record shows that Apache did not specifically argue that it was entitled to summary judgment on the claims alleging that Apache failed to retain the well-test results it deemed inaccurate and failed to retain the shakeouts taken before May 2006.  By contrast, Apache did specifically argue that it was entitled to summary judgment on W&T's claims that Apache had  breached the PHA by failing to give notice of well tests, by failing to produce documents in response to W&T's audit request (documents that W&T later obtained), and by failing to measure BS&W using a proportional-to-flow sampler.  Apache specifically argued that W&T's failure to show damages from these alleged contract breaches entitled it to summary judgment.  Apache did not make this argument as to the claims alleging a right to relief for the failure to retain the well-test records it deemed inaccurate and the failure to retain the pre-May 2006 shakeouts.  The arguments and record do not present a sufficient basis for the court to now enter summary judgment on these claims.  *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 435 (5th Cir. 2000) ("The district court may enter summary judgment sua sponte if the parties are provided with reasonable notice and an opportunity to present argument opposing the judgment.").

At trial, W&T must show a causal connection between Apache's failure to retain records of the well tests Apache deemed inaccurate and the pre-May 2006 shakeouts and damages.  (Docket Entry No. 105 at 19).  Apache may argue at trial that W&T cannot establish such a  connection.  But granting summary judgment that no such connection can be shown is inappropriate, given the current record.

Apache's motion for reconsideration is denied.

IV.     **Conclusion**

W&T's motion for reconsideration, (Docket Entry No. 114), is granted.  W&T may use Opinion C as a basis for calculating the damages it incurred from Apache's allegedly inaccurate well tests and misallocation.  Apache's motion for reconsideration, (Docket Entry No. 115), is denied. The joint pretrial order is set for **June 13, 2014** and docket call is set for **June 20, 2014, at 1:00 p.m.** in Courtroom 11–B.

SIGNED on April 21, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge